IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Kellen L.,[1] ) | |
| Plaintiff, ) | C/A No. 6:25-cv-1070-RMG-KFM |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Commissioner of Social Security, ) | |
| Defendant. ) | |

This case is before the court for a report and recommendation pursuant to Local Civil Rule 73.02(B)(2)(a) (D.S.C.), concerning the disposition of Social Security cases in this District, and 28 U.S.C. § 636(b)(1)(B).[2] The plaintiff brought this action pursuant to Section 205(g) of the Social Security Act, as amended (42 U.S.C. 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claim for disability insurance benefits under Title II of the Social Security Act.

## ADMINISTRATIVE PROCEEDINGS

Applicable to the instant matter, the plaintiff filed an application for disability insurance benefits ("DIB") on October 26, 2023, alleging that he became unable to work on August 12, 2022 (Tr. 207–13). The application was denied initially (Tr. 89–101) and on reconsideration (Tr. 103–13) by the Social Security Administration. On March 26, 2024, the plaintiff requested a hearing (Tr. 138–39). On August 15, 2024, an administrative hearing was held at which the plaintiff, represented by counsel, and Robert Brabham, an impartial

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.

[2] A report and recommendation is being filed in this case in which one or both parties declined to consent to disposition by the magistrate judge.

vocational expert, appeared and testified via telephone before the administrative law judge ("ALJ") assigned to the case (Tr. 46–87). On August 23, 2024, the ALJ considered the case *de novo* and found that the plaintiff was not under a disability as defined in the Social Security Act, as amended (Tr. 27–45). The ALJ's finding became the final decision of the Commissioner of Social Security when the Appeals Council denied the plaintiff's request for review on November 27, 2024 (Tr. 1–4). The Appeals Council also denied a second request for review from the plaintiff containing new evidence on December 23, 2024 (Tr. 7–16). The plaintiff then filed this action for judicial review (doc. 1).

In making the determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

(1)     The claimant meets the insured status requirements of the Social Security Act through June 30, 2025.

(2)     The claimant has not engaged in substantial gainful activity since August 12, 2022, the alleged onset date (20 C.F.R. § 404.1571 *et seq*.).

(3)     The claimant has the following severe impairments: status-post residuals from left elbow fracture; posttraumatic stress disorder (PTSD); and, a mood disorder (20 C.F.R. § 404.1520(c)).

(4)     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526).

(5)     After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) except can only use the left (non-dominant) upper extremity to lift, carry, push, and pull 10 pounds occasionally and less than 10 pounds frequently; no more than frequent reaching in all directions with the left, non-dominant, upper extremity; no more than occasional crawling; no climbing ladders, ropes, or scaffolds; no more than occasional exposure to hazards such as unprotected heights and dangerous machinery; limited to simple, routine, and repetitive tasks and simple work-related decisions, but is able to maintain concentration, persistence, and pace for periods for at least two hours at a time, perform activities within a schedule, maintain regular attendance, and complete a normal workday and work week; no jobs that require more than

2

occasional close, "team-type" interactions with coworkers, which is sometimes referred to as tandem work; no jobs that require more than occasional interactions with the general public; no jobs that involve customer service; and, can tolerate no more than occasional changes in a routine work-setting.

(6)     The claimant is unable to perform any past relevant work (20 C.F.R. § 404.1565).

(7)     The claimant was born on December 25, 1983, and was 38 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 C.F.R. § 404.1563).

(8)     The claimant has at least a high school education (20 C.F.R. § 404.1564).

(9)     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

(10)     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 404.1569 and 404.1569a).

(11)     The claimant has not been under a disability, as defined in the Social Security Act, from August 12, 2022, through the date of this decision (20 C.F.R. § 404.1520(g)).

The only issues before the court are whether proper legal standards were applied and whether the final decision of the Commissioner is supported by substantial evidence.

## **APPLICABLE LAW**

Under 42 U.S.C. § 423(d)(1)(A), (d)(5), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

3

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment that meets or medically equals an impairment contained in the Listing of Impairments found at 20 C.F.R. pt. 404, subpt. P, app. 1, (4) can perform his past relevant work, and (5) can perform other work. *Id.* § 404.1520. If an individual is found disabled or not disabled at any step, further inquiry is unnecessary. *Id.* § 404.1520(a)(4).

A claimant must make a *prima facie* case of disability by showing he is unable to return to his past relevant work because of his impairments. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983). Once an individual has established a *prima facie* case of disability, the burden shifts to the Commissioner to establish that the plaintiff can perform alternative work and that such work exists in the national economy. *Id.* (citing 42 U.S.C. § 423(d)(2)(A)). The Commissioner may carry this burden by obtaining testimony from a vocational expert. *Id.* at 191–92.

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Id.* In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Id*. Consequently, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

4

## ANALYSIS

The plaintiff, who was 38 years old on the alleged disability onset date, seeks disability based upon impairments that limit his ability to work. He has past relevant work experience as a gutter installer/construction worker (Tr. 39). The plaintiff argues that the ALJ erred in (1) finding that the plaintiff did not meet Listings 12.04, 12.06, and 12.15 (doc. 6 at 2); (2) explaining the residual functional capacity ("RFC") assessment (*id*. at 2, 3); and (3) evaluating the plaintiff's activities of daily living ("ADLs") (*id*. at 3–4).[3] The plaintiff seeks an award of benefits (*id*. at 4). The Commissioner, on the other hand, asserts that the ALJ's decision is supported by substantial evidence, should be affirmed, and benefits should not be awarded (doc. 9 at 5–12).

As an initial matter, the plaintiff's brief, spanning only four pages, references little to no record evidence in support of his assertions of error and references treatment records that were not considered in the ALJ's decision (addressed below) (*see* doc. 6). As such, the plaintiff (who did not file a reply brief) has raised the asserted errors in a perfunctory manner. Courts have held that when a plaintiff raises an issue in a perfunctory manner, the issue is deemed waived. *See Jacobus v. Comm'r of Soc. Sec.*, 664 F. App'x 774, 777 n.2 (11th Cir. 2016) (noting that the plaintiff's "perfunctory argument" was arguably abandoned (citing *Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278–79 (11th Cir. 2009) (explaining that simply stating an issue exists, without further argument or discussion, constitutes abandonment of that issue)); *Rice v. Comm'r of Soc. Sec.*, 169 F. App'x 452, 454 (6th Cir. 2006) (finding that issues raised in a perfunctory manner "without elaboration or legal argument" "unaccompanied by some effort at developed argumentation" were deemed waived (internal citations and quotation marks omitted)); *Parms v. Colvin*, C/A No.

_____

[3] The plaintiff's brief erroneously indicates that this appeal involves a claim for DIB and supplemental security income benefits (doc. 6 at 1). However, the instant matter involves only DIB benefits (*see* Tr. 27).

5

1:13-cv-01002, 2015 WL 1143209, at *8 n.10 (M.D.N.C. Mar. 13, 2015) (noting that the "Court need not address . . . perfunctory arguments by counsel), *memorandum and recommendation adopted by* doc. 32 (M.D.N.C. Mar. 31, 2015). Indeed, the court is not required to rummage through the administrative record to construct and present a well-supported position for the plaintiff. *See Hayes v. Self-Help Credit Union*, C/A No. 1:13-cv-00880, 2014 WL 4198412, at *2 (M.D.N.C. Aug. 22, 2014) (noting that "[i]t is not the role or the responsibility of the Court to undertake the legal research needed to support or rebut a perfunctory argument (internal citations omitted)). Nevertheless, despite the perfunctory nature of the plaintiff's arguments, the undersigned will address the ALJ's evaluation of the Listings, the RFC assessment, and the plaintiff's ADLs.

**New Evidence**

The plaintiff submitted new evidence after the ALJ's decision was issued that was not exhibited or addressed by the Appeals Council. While not presented as a ground for relief by the plaintiff, the undersigned finds that the new evidence submitted by the plaintiff is not a basis for remand of this matter.

The new records consist of an independent medical examination of the plaintiff by Yashbir T. Rana, M.D. (Tr. 7–16). Dr. Rana examined the plaintiff via video on one occasion on October 23, 2024, and completed a medical questionnaire (Tr. 9–16) two months after the issuance of the ALJ's decision (Tr. 27–45). The plaintiff did not submit this evidence to the Appeals Council in his request for review, and the Appeals Council denied the plaintiff's request for review on November 27, 2024 (Tr. 1–4). Following that denial, the plaintiff submitted Dr. Rana's medical source statement to the Appeals Council on December 4, 2024 (Tr. 8). On December 23, 2024, the Appeals Council acknowledged receipt of Dr. Rana's medical source statement but "found no reason under [its] rules to reopen and change the decision" to affirm the ALJ:

6

> Under our rules, we may reopen (look again at) and change a
> determination or decision within certain time limits for any of the
> following reasons.
>
> > New and material evidence.
> >
> > A clerical error.
> >
> > The evidence considered in making the
> > determination or decision clearly shows that there
> > was an error
>
> We found no reason under our rules to reopen and change the
> decision . . . .

(Tr. 7). As such, the Appeals Council did not exhibit or review the new evidence, although it is included in the record before the undersigned. While the plaintiff references Dr. Rana's examination notes in his brief, he has not argued or asserted error with the Appeals Council's determination not to exhibit or otherwise consider this evidence (*see* doc. 6).

At the outset, the plaintiff did not satisfy the requirements for consideration of his new evidence by the Appeals Council. Under the regulations, a claimant seeking review from the Appeals Council may submit new evidence to the Appeals Council if he can show (1) the evidence is new and material; (2) the evidence relates to a period on or before the hearing date; (3) there is a reasonable probability that additional evidence would change the outcome of the decision; and (4) the claimant can show good cause for not earlier submitting the evidence. 20 C.F.R. § 404.970. Here, while the plaintiff belatedly submitted the new evidence to the Appeals Council, he did not present good cause or a showing of a reasonable probability of a different outcome with its consideration.

Though the Appeals Council did not make a finding regarding good cause, the undersigned will address whether the plaintiff has met the good cause standard for the late submission of the medical examination by Dr. Rana. *See Lockaby v. Saul*, C/A No. 4:18-

cv-02056-DCN, 2020 WL 1149725, at *4 (D.S.C. Mar. 10, 2020) (collecting cases noting that courts in this district frequently "find it appropriate to consider factors that were not originally addressed by the Appeals Council").

The regulations define the circumstances under which a claimant can establish good cause, including:

(1) Our action misled you;

(2) You had a physical, mental, educational, or linguistic limitation(s) that prevented you from informing us about or submitting the evidence earlier; or

(3) Some other unusual, unexpected, or unavoidable circumstance beyond your control prevented you from informing us about or submitting the evidence earlier. Examples include, but are not limited to:

(i) You were seriously ill, and your illness prevented you from contacting us in person, in writing, or through a friend, relative, or other person;

(ii) There was a death or serious illness in your immediate family;

(iii) Important records were destroyed or damaged by fire or other accidental cause; or

(iv) You actively and diligently sought evidence from a source and the evidence was not received or was received less than 5 business days prior to the hearing.

20 C.F.R. § 404.935(b).

Here, the plaintiff has not made the required showing of good cause. Indeed, the plaintiff's brief does not even address the fact that the independent examination by Dr. Rana was not part of the record before the ALJ. Although the video medical examination by Dr. Rana occurred after the ALJ's decision was issued, the plaintiff also failed to provide good cause for failing to submit that evidence to the Appeals Council before it made its

8

decision, which was issued after the appointment with Dr. Rana occurred[4] (*see* Tr. 1–3, 7–8, 17–18). As such, because the plaintiff has not satisfied the requirements under the regulations to demonstrate good cause for his untimely submission, even if the evidence was "new" and "material", the opinion evidence from Dr. Rana should not be considered in this action.[5] *See also Howell v. Saul*, C/A No. 2:18-cv-01323-BHH-MGB, 2019 WL 3416613, at \*11 (D.S.C. July 10, 2019) *Report and Recommendation adopted by* 2019 WL 3413244 (D.S.C. July 29, 2019). Accordingly, while not presented as a ground for relief by the plaintiff, the undersigned finds that the new evidence submitted by the plaintiff is not a basis for remand of this matter.

***Listing Analysis***

The plaintiff argues that the ALJ's listing analysis is not supported by substantial evidence (doc. 6 at 2). To determine whether a claimant's impairments meet or equal a listed impairment, the ALJ identifies the relevant impairments and compares the listing criteria with the evidence of a claimant's symptoms. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986) (explaining that, without identifying the relevant listings and comparing the claimant's symptoms to the listing criteria, "it is simply impossible to tell whether there was substantial evidence to support the determination"). "In cases where

---

[4] Notably, the Appeals Council gave the plaintiff additional time before they would review his case, but he still failed to submit the examination to the Appeals Council (Tr. 17–18).

[5] The law provides that evidence submitted to the Appeals Council with the request for review must be considered in deciding whether to grant review "if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." *Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 95-96 (4th Cir. 1991) (en banc) (internal citation and quotation marks omitted). Here, the independent examination by Dr. Rana, while "new," does not indicate that it relates to the period on or before the date of the ALJ's decision and does not appear to be material. For example, Dr. Rana saw the plaintiff on one occasion during a limited video examination and noted that the plaintiff's conditions would stabilize with consistent housing and living environments and psychological/medical treatment (*see* Tr. 9–16). Based on the foregoing, even if the plaintiff could show good cause, it does not appear that the evidence from Dr. Rana is material or applicable to the time period under consideration by the ALJ; thus, it would still be improper for review.

there is 'ample factual support in the record' for a particular listing, the ALJ must provide a full analysis to determine whether the claimant's impairment meets or equals the listing." *Beckman v. Apfel*, C/A No. WMN-99-3696, 2000 WL 1916316, at *9 (D. Md. Dec. 15, 2000) (quoting *Cook*, 783 F.2d at 1172). This includes comparing symptoms, signs, and laboratory findings with the appropriate listing criteria. 20 C.F.R. § 404.1526(a); *Cook*, 783 F.2d at 1173. An impairment can medically equal a listing if there are medical findings equal in severity to all the criteria for that listing. *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990); 20 C.F.R. § 404.1526(a) (medical findings must be at least equal in severity and duration to the listed criteria).

Here, the plaintiff argues that the ALJ erred in the listing analysis by failing to find that the plaintiff met or medically equaled Listings 12.04, 12.06, or 12.15 based on his mental impairments (doc. 6 at 2). Listings 12.04, 12.06, and 12.15 can be met by meeting paragraphs A and B or paragraphs A and C. 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.04, 12.06, 12.15. Paragraph A of all three listings cites symptoms associated with the impairments. *Id*. §§ 12.04(A), 12.06(A), 12.15(A). Paragraphs B and C for all three listings are identical. *Id*. §§ 12.04(b), 12.06(B), 12.15(B). Liberally construing the plaintiff's perfunctory challenge to the listings analysis, the plaintiff challenges the ALJ's paragraph B analysis. Paragraph B for all three listings requires a claimant to show:

> B.     Extreme[6] limitation of one, or marked[7] limitation of two, of the following areas of mental functioning (see 12.00F):
>
> > a. Understand, remember, or apply information (see 12.00E1).
> >
> > b. Interact with others (see 12.00E2).

---

[6] Extreme limitations in these Listings are defined as the "inability to function independently, appropriately, or effectively and on a sustained basis." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00F.

[7] Marked limitations in these Listings are defined as "a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00F.

    c. Concentrate, persist, or maintain pace (see 12.00E3).

    d. Adapt or manage oneself (see 12.00E4).

*Id*. §§ 12.04(B), 12.06(B), 12.15(B) (footnotes added). Paragraph C of all three listings requires a claimant to show:

> C. Your mental disorder in this listing category is "serious and persistent"; that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:
>
> > 1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); and
> >
> > 2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c).

*Id*. §§ 12.04(C), 12.06(C), 12.15(C).

    Relevant hereto, the ALJ addressed Listings 12.04, 12.06, and 12.15, noting that the plaintiff did not have one extreme or two marked limitations in the four areas of mental functioning set forth in paragraph B of each listing (Tr. 36–37). The ALJ explained that the plaintiff had moderate limitations in understanding, remembering, or applying information; moderate limitations in interacting with others; moderate limitations in concentrating, persisting, or maintaining pace; and moderate limitations in adapting or managing himself (Tr. 36). The ALJ further noted that the plaintiff did not meet the paragraph C criteria (Tr. 37). Here, the plaintiff does not argue that he meets the paragraph C criteria – instead, he appears to assert that the ALJ should have found marked or extreme limitations in the four paragraph B functional areas (doc. 6 at 2). However, as set forth in more detail below, the ALJ's Listing analysis is supported by substantial evidence and should be affirmed because the record does not support more than moderate limitations in any of the functional areas.

The first functional area is understanding, remembering, or applying information.  In this area, as noted, the ALJ found moderate limitations (Tr. 36).  The ALJ noted that the plaintiff testified at the hearing that he had no problems with understanding, remembering, and applying information (Tr. 36).  The ALJ also noted that the plaintiff was able to participate without issue in the administrative hearing and provided information regarding his educational history, medical history, and work history.  The ALJ also noted that the plaintiff may have some difficulty in this area during periods of escalated mental symptoms (Tr. 36).  The entirety of the plaintiff's briefing regarding this issue is as follows:

> The ALJ's finding that [the plaintiff's] mental impairments did not meet the paragraph B criteria for Listings 12.04, 12.06, or 12.15 lacks substantial evidentiary support.  Treatment notes document consistent anxiety, PTSD, and depression symptoms, including flashbacks, nightmares, and social withdrawal.  Reports from [the plaintiff's] mother and treating processionals indicate inability to maintain hygiene and perform activities of daily living independently.  See Ex. 7E, Tr. 281–293; Ex. 6E, Tr. 270–280.

(Doc. 6 at 2).  However, the above listed symptoms do not address the ALJ's determination that the plaintiff had no more than moderate limitations in this functional area.  Indeed, the only record evidence the plaintiff references are two disability reports.  The pages cited by the plaintiff, however, contain information about his physical impairments and the injury to his left arm, but mention nothing of his mental impairments or treatment (*see* Tr. 270–93).  The report does indicate that the plaintiff can read and write a simple message, shopping list, or short/simple notes (Tr. 284).  However, there is nothing in that notation to support the plaintiff's argument that he had additional limitations in this functional area.  Further, the limited treatment records do not reflect trouble with memory (Tr. 350–73, 378–446, 636–40, 646–48, 653–67, 669, 672–74, 685–93, 703–06, 733–42, 760, 874–75, 954–61, 1014–15, 1180–81, 1189–90).  Additionally, as recognized by the ALJ, during the administrative hearing, the plaintiff specifically testified that he did not have trouble with this functional

12

area (Tr. 70). As such, substantial evidence supports the ALJ's determination that the plaintiff had no more than moderate limitations in this functional area.

The second functional area is interacting with others, and the ALJ found that the plaintiff had moderate limitations in this area (Tr. 36). The ALJ noted that although the plaintiff generally got along with providers, there was one occasion where he cursed at a nurse from the VA and hung up when the provider would not see him an hour late for his appointment (Tr. 36). The ALJ also noted that the plaintiff reported difficulty getting along with others (Tr. 36). As noted above, the plaintiff's slim brief asserts broadly that the ALJ should have found greater limitations in this functional area. However, the symptoms listed by the plaintiff (other than social withdrawal) do not address the ALJ's determination that the plaintiff had no more than moderate limitations in this functional area. Further, the two disability reports referenced by the plaintiff contain no information about the plaintiff's mental impairments or treatment (doc. 6 at 2 (citing Tr. 270–93)). The plaintiff also has not provided reference to treatment records supporting more than a moderate limitation in this functional area. For example, as recognized by the ALJ, the record contains only one incident of an angry outburst (when the plaintiff cursed at the nurse from the VA) (Tr. 36 (citing Tr. 760)). Moreover, the plaintiff testified that he could not be in a room with more than three people and had a short fuse, but he also indicated that he was living with his fiancée (and with his fiancée's father) and that he worked with his fiancée as a delivery driver (Tr. 49, 58, 70, 74, 659–61, 760). The plaintiff's treatment records reflect variations in the plaintiff's mental health symptoms, reflecting an inpatient stay in June 2023 when the plaintiff stopped taking his medications as well as other exacerbations in his symptoms when he reported no longer taking his medications (Tr. 636–40, 954–61). Similarly, the plaintiff had one notation of manic behavior and one where he was noted as irritable, but he also reported doing well, and presented no concerns to providers during other treatment visits (Tr. 659–61, 662–67, 669, 672, 954–61). As noted, the plaintiff has not identified any

13

other record evidence in support of his argument that he had more than moderate limitations in this functional area.  In light of the foregoing, the ALJ's determination that the plaintiff had no more than moderate limitations in this functional area is supported by substantial evidence and should be affirmed.

        In the third functional area of concentrating, persisting, and maintaining pace, the ALJ found that the plaintiff had moderate limitations (Tr. 36).  The ALJ noted that although the plaintiff's examinations have often been normal or nearly normal, to account for periods of escalated mental symptoms, the ALJ assessed moderate limitations in this functional area (Tr. 36).  As noted above, the plaintiff's brief asserts broadly that the ALJ should have found greater limitations in this functional area.  However, the symptoms listed by the plaintiff do not address the ALJ's determination that the plaintiff had no more than moderate limitations in this functional area.  Further, the two disability reports referenced by the plaintiff contain no information about the plaintiff's mental impairments or treatment (doc. 6 at 2 (citing Tr. 270–93)).  The plaintiff also has not provided reference to treatment records supporting more than a moderate limitation in this functional area.  For example, as recognized by the ALJ, although the plaintiff testified that he had a short attention span, he also testified that he spent his day drawing, walking, and watching television (Tr. 72–73, 75).  Further, the plaintiff's treatment records note some exacerbation in symptoms when the plaintiff discontinued his medications (one of which required inpatient treatment), but otherwise reflect reports from the plaintiff that he was doing well and had no concerns (Tr. 636–40, 665, 669, 572–74, 954–61, 1189–90).  Other than testimony by the plaintiff that he had a short attention span, there is no record evidence of distractibility or an inability to pay attention.  As such, substantial evidence supports the ALJ's determination that the plaintiff's limitations in this functional area were no more than moderate in nature.

        The fourth functional area is adapting and managing oneself.  In this domain, the ALJ found moderate limitations (Tr. 36).  The ALJ noted that although the plaintiff had

14

trouble regulating his emotions during a phone call with the VA, the medical records do not reflect that the plaintiff struggled with hygiene or grooming secondary to mental symptoms (Tr. 36). As noted above, the plaintiff's brief argues broadly that the ALJ should have found greater limitations in this functional area. The plaintiff also argues that the plaintiff had difficulty with hygiene and performing ADLs (doc. 6 at 2). However, the two disability reports referenced by the plaintiff contain no information about the plaintiff's mental impairments or treatment (*id*. at 2 (citing Tr. 270–93)). The plaintiff has also not provided reference to treatment records supporting more than a moderate limitation in this functional area. For example, as recognized by the ALJ, although the plaintiff had trouble with temper control and testified that his fiancée helped him dress, some of those limitations were secondary to his physical – not his mental – impairments (Tr. 36). Further, the treatment notes indicate that although the plaintiff had one period of inpatient treatment secondary to not taking his medication, he otherwise reported doing well and had no concerns (Tr. 636–40, 659–61, 662–67). In June 2024, the plaintiff reported a variable mood, but was noted as engaged and fully alert and oriented (Tr. 1189–90), and one month later, the plaintiff indicated that he could not attend his therapy appointment because he was working with his fiancée as a delivery driver (Tr. 1180–81). Additionally, as recognized by the ALJ, although the plaintiff testified that he had a short attention span, he also testified that he spent his day drawing, walking, and watching television (Tr. 72–73, 75). Further, the plaintiff's treatment records note some exacerbation in symptoms when the plaintiff discontinued his medications (one of which required inpatient treatment), but otherwise reflect reports from the plaintiff that he was doing well and had no concerns (Tr. 636–40, 665, 669, 572–74, 954–61, 1189–90). As such, substantial evidence supports the ALJ's determination that the plaintiff's limitations in this functional area were no more than moderate in nature. Because the plaintiff had no more than moderate limitations in any of the four functional areas, the plaintiff does not meet the paragraph B criteria for the listings.

15

In light of the foregoing, the undersigned finds that substantial evidence supports the ALJ's determination that the plaintiff's mental impairments did not meet Listings 12.04, 12.06, or 12.15.

### Residual Functional Capacity

The regulations provide that a claimant's RFC is the most that he can still do despite his limitations. 20 C.F.R. § 404.1545(a). It is the ALJ's responsibility to make the RFC assessment, *id.* § 404.1546(c), and the ALJ does so by considering all of the relevant medical and other evidence in the record, *id.* § 404.1545(a)(3). Social Security Ruling ("SSR") 96-8p provides in pertinent part:

> The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraph (b), (c), and (d) of 20 C.F.R. §§ 404.1545 and 416.945. Only after that may [the] RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.

SSR 96-8p, 1996 WL 374184, at *1. The ruling further provides:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

*Id.* at *7 (footnote omitted). Further, "[t]he RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." *Id.* Moreover, "[t]he RFC assessment must always consider and address medical source opinions. If the

16

RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." *Id.*

As noted above, in evaluating the plaintiff's case, the ALJ set forth the following RFC assessment:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) except can only use the left (non-dominant) upper extremity to lift, carry, push, and pull 10 pounds occasionally and less than 10 pounds frequently; no more than frequent reaching in all directions with the left, non-dominant, upper extremity; no more than occasional crawling; no climbing ladders, ropes or scaffolds; no more than occasional exposure to hazards such as unprotected heights and dangerous machinery; limited to simple, routine, and repetitive tasks and simple work-related decisions, but is able to maintain concentration, persistence, and pace for periods for at least two hours at a time, perform activities within a schedule, maintain regular attendance, and complete a normal workday and work week; no jobs that require more than occasional close, "team-type" interactions with coworkers, which is sometimes referred to as tandem work; no jobs that require more than occasional interactions with the general public; no jobs that involve customer service; and, can tolerate no more than occasional changes in a routine work-setting.

(Tr. 37). The ALJ's decision also discussed the record evidence in light of the RFC assessment (Tr. 30–39).

The plaintiff argues that the ALJ erred in finding that the plaintiff could engage in a range of light work (doc. 6 at 2, 3). Although somewhat difficult to decipher, the plaintiff's arguments appear to be that the ALJ erred in finding that the plaintiff could engage in fine and gross movements, and by not addressing excessive absences caused by his impairments (*id.*).

**Fine and Gross Movement Limitations**

The plaintiff argues that the ALJ erred by failing to explain how the plaintiff could engage in fine and gross movements in his left upper extremity (doc. 6 at 2). However, the plaintiff's thin argument regarding this error relies solely on Dr. Rana's medical source statement that was submitted after the ALJ's and the Appeals Council's

17

decisions and should not be considered here, as addressed above (*see id*.). In any event, Dr. Rana's opinion does not specifically address fine and gross manipulation but instead indicates that the plaintiff's limitations are in activities requiring flexion and extension of the elbow (Tr. 10–11). Dr. Rana opined that the plaintiff could carefully handle objects for up to 30% of the day but could frequently handle with his fingers, completing the one-time examination of the plaintiff via video and without an actual physical examination (Tr. 10). Further, as recognized by the ALJ, although the plaintiff testified that he needs help from his fiancée with putting on his boxers, socks, and shirt, he did not testify to any difficulty using his hands (such as for eating, driving, etc.) (Tr. 38–39). Indeed, Dr. Rana noted the plaintiff reported being able to bathe and feed himself (Tr. 15). Further, the treatment records noted difficulty with the plaintiff's left elbow, but did not indicate that he struggled with fine or gross movements. For example, the plaintiff reported pain in his arm secondary to helping someone move and lifting heavier objects than he should have, but did not indicate that he had any trouble with his hands (Tr. 360–63). The plaintiff also indicated that he could not attend a therapy meeting because he was working as a delivery driver with his fiancée (Tr. 1180–81). As noted, the plaintiff has not identified record evidence (other than the untimely submitted medical examination) to support his argument that he could not engage in fine or gross movements with his left upper extremity. As such, substantial evidence supports the ALJ's determination that the plaintiff did not require an additional RFC limitation relating to fine or gross movements, and, therefore, it should be affirmed.

**Excessive Absences**

As noted, the plaintiff also argues that the ALJ erred because the RFC assessment does not address the excessive absences the plaintiff would require due to his impairments, per Dr. Rana's opinion (doc. 6 at 3). The plaintiff also provides a blanket cite to one hundred pages of medical records in support of this argument, but provides no explanation as to how those records support his argument regarding excessive absences

(*see id*.).  Indeed, although Dr. Rana indicated that the plaintiff would not be able to sustain employment in a physically demanding occupational environment and could not train for a new vocation, she also indicated that his quality of life and psychological stability would improve significantly with access to consistent psychological and medical care (Tr. 15).  As noted by the ALJ, while the treatment records do reflect some exacerbations in symptoms, the plaintiff has only required inpatient care on one occasion and his mental status examinations have included limited abnormal findings (Tr. 39).  The plaintiff has not identified other record evidence in support of his argument that his mental impairments would cause excessive absences.  As such, the undersigned finds that substantial evidence supports the ALJ's determination that the RFC assessment did not need to address excessive absences.

The Court of Appeals for the Fourth Circuit has held that while an RFC assessment must include a narrative describing how the evidence supports the ALJ's conclusions, there is no particular format or language that must be utilized, so long as the decision permits meaningful judicial review.  *See Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016).  Here, as outlined above, the ALJ's decision, with its detailed discussion of the plaintiff's impairments, permits such review.  As such, the undersigned finds that the ALJ's RFC assessment is supported by substantial evidence and free from legal error.

### *Activities of Daily Living*

The plaintiff also asserts that the ALJ erred in the consideration of the plaintiff's ADLs (doc. 6 at 3–4).  The plaintiff asserts that the ALJ erred in "Paragraph 5 of the ALJ's decision, Page 18"; quotes language purportedly from the decision; and refers to transcript Page 41 (*see* doc. 6 at 3).  As noted by the Commissioner, however, the quoted language does not appear in the ALJ's decision, and the ALJ's decision is only fifteen pages – meaning there is no Page 18 of the decision (doc. 9 at 11–12).  The plaintiff, who is represented by counsel, did not file a response to the Commissioner or otherwise clarify

19

the asserted error with respect to the ALJ's consideration of his ADLs.  As such, the plaintiff has not asserted an error with respect to the ALJ's evaluation of his ADLs; thus, the decision should be affirmed.

## **CONCLUSION AND RECOMMENDATION**

The Commissioner's decision is based upon substantial evidence and is free of legal error.  Now, therefore, based upon the foregoing,

IT IS RECOMMENDED that the Commissioner's decision be affirmed.

**IT IS SO RECOMMENDED**.

s/Kevin F. McDonald
United States Magistrate Judge

December 19, 2025
Greenville, South Carolina

*The attention of the parties is directed to the important notice on the following page.*

20

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
250 East North Street
Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation**. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).